**FILED - GR**
August 14, 2008 4:55 PM
RONALD C. WESTON, SR., CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: FHW/

# UNITED STATES DISTRICT C

### WESTERN DISTRICT OF MICHIGAN, SOUTHERN I

UNITED STATES OF AMERICA,

V.

ELIODORO AGUILAR-SOLANO,

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER:   1:08-MJ-75

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.  On or about ____July 12, 2008____ in ____Benzie____ County, in the Western District of Michigan, Southern Division defendant(s) did, (Track Statutory Language Offense)

Knowingly caused, assisted and aided and abetted in the smuggling, transportation, and harboring of illegal aliens

in violation of Title ____8____ United States Code, Section(s) ___1324(a)(1)(A)(i), (ii), (iii)___

I further state that I am a(n) ___Special Agent, ICE___ and that this complaint is based on the following
Official Title

facts:

See attached affidavit

Continued on the attached sheet and made a part hereof: _X_ Yes ___ No

_____
Signature of Complainant   BRUCE WAGNER

Sworn to before me and subscribed in my presence,

__August 14, 2008__   _4:50 PM_   at   __Grand Rapids, Michigan__
Date and Time Issued

Honorable HUGH W.  BRENNEMAN, JR.      _____
Magistrate Judge                                            Signature of Judicial Officer
Name & Title of Judicial Officer

## AFFIDAVIT

1.  Affiant, Bruce Wagner, is a Special Agent with the Department of Homeland Security, U.S. Immigration and Customs Enforcement (U.S. ICE), and is assigned to the Sault Ste. Marie, Michigan office.  Affiant began his career in 1984 as a Border Patrol Agent with the United States Immigration and Naturalization Service (U.S. INS).  In 1988, this affiant became a Special Agent with the U.S.INS.  In 1995, affiant became the Port Director with the U.S. INS at Sault Ste. Marie, Michigan and remained such until 2003, when the U.S. INS became part of the Department of Homeland Security.  In 2006, affiant became a Special Agent with U.S. ICE.  Affiant is responsible for the investigation of both criminal and administrative violations of the customs and immigration laws of the United States, including alien smuggling.  This affidavit therefore does not summarize all of the facts known to me or other law enforcement agents and officers at this time.

2.  The information in this affidavit is based on my personal knowledge, information provided to me by other law enforcement officers and individuals, and having read the reports and memoranda of other law enforcement officers.

3.  I am familiar with 8 U.S.C. § 1324(a)(1)(A), which makes it a felony offense for anyone knowingly to cause an alien to enter the United States other than at an official place of entry, to cause such an alien to thereafter be transported within the United States, to harbor such an alien within the United States, and to encourage or induce such an alien to come to or reside in the United States.  Pursuant to § 1324(a)(1)(B), the penalties are doubled when the offense is committed for purposes of private financial gain.

4.  On July 12, 2008, Senior Special Agent (SSA) Bruce Wagner, U.S. Immigration and Customs Enforcement (ICE), Office of the Resident Agent, Sault Ste. Marie, Michigan (RAC/MJ) received information from Sergeant (Sgt) Troy Lamerson, Benzie County Sheriff's Office (BCSO), Beulah, Michigan regarding five (5) subjects identified as Anai GARCIA-CALDERON, Yanin HERNANDEZ-CALDERON, Ivan HERNANDEZ-CALDERON, Cesar ANGELES-BORRAYO, and Nicacio HERNANDEZ-CALDERON.   It was believed that all five (5) subjects did not have the proper documentation to be legally present in the United States.

5.  Through a telephonic interview conducted by SSA Wagner, it was determined that all five (5) subjects had entered United States illegally, without proper entry documents, and without inspection by United States Customs and Border Protection.  Immigration detainers were placed upon all five (5) subjects, after which they were lodged in the Benzie County Jail.

6. Earlier on July 12, 2008, Sgt Troy Lamerson and Deputy Troy Packard were dispatched to the Honor Motel, Honor, Michigan in reference to a report that someone was being held against their will.

7. Upon arrival at the Honor Motel, Sgt Lamerson and Deputy Packard met with three (3) Hispanic males (Nicacio HERNANDEZ-CALDERON, Ivan HERNANDEZ-CALDERON and Cesar ANGELES-BORRAYO) and one (1) Hispanic female (Yanin HERNANDEZ-CALDERON).

8. Nicacio HERNANDEZ-CALDERON (herein known as HERNANDEZ) advised Sgt Lamerson that his cousin, Anai GARCIA-CALDERON (herein known as GARCIA), was being held against her will at 10791 Main Street Apt. #3, Honor, Michigan. It was reported that this was the residence of Eliodoro AGUILAR-SOLANO (herein known as AGUILAR) and Marcela ZAVALA.

9. HERNANDEZ stated that GARCIA had called him in Chicago and requested that he come and get her. HERNANDEZ stated that GARCIA had initially borrowed $3200.00, and now owed $3000.00 to AGUILAR, and that this money was used for GARCIA to come to the United States from Mexico.

10. HERNANDEZ had brought money to pay AGUILAR; however, he did not have enough money to pay off the entire debt. AGUILAR would not release GARCIA to HERNANDEZ until the full amount of the debt was paid.

11. During a telephone conversation between GARCIA and Yanin Hernandez-Calderon, AGUILAR took the phone from GARCIA and told Yanin HERNANDEZ-CALDERON that GARCIA was not allowed to leave until she paid him $3000.00.

12. AGUILAR also told Yanin HERNANDEZ-CALDERON that he would not accept partial payment; he would only accept $3000.00. If he did not receive full payment, then GARCIA would not be released from the apartment. AGUILAR stated this kind of thing has happened in the past (meaning he had helped another subject come to the U.S. and the subject left without paying off the debt) and that it was not going to happen again.

13. On July 14, 2008, Sgt. Troy Lamerson and Michigan State Trooper Doehring traveled to 10791 Main Street, Apt. #3, Honor, Michigan 49640. Upon arrival at the apartment, they spoke with Marcela ZAVALA, wife of AGUILAR. Marcela ZAVALA told Sgt. Troy Lamerson and Trooper Doehring that AGUILAR had walked to the store and should be back at any time.

14. AGUILAR was later found hiding in a recreational vehicle belonging to John Rosa, Sr. parked in front of Bud's Marathon Station. Sgt. Troy Lamerson asked AGUILAR if he had paperwork that GARCIA had signed showing she owed him money. AGUILAR produced a green piece of paper written in Spanish with the amount of

$3200.00 and the names of "Anahi" GARCIA-CALDERON and "Heliodor" AGUILAR-SOLANO. The document states GARCIA owes AGUILAR $3200.00 with a fifteen percent (15%) interest rate.

15. A second piece of paper was found in AGUILAR's wallet with the name of Anai and dollar figures of "620 + 1825 + 750 = 3195." Also located on the premises was Julio Cesar ARTEAGA-REA, son of AGUILAR, and Jose HERNANDEZ-HERNANDEZ.

16. Through a telephonic interview conducted by SSA Wagner, it was determined that AGUILAR, Marcela ZAVALA, Julio Cesar ARTEAGA-REA, and Jose HERNANDEZ-HERNANDEZ had entered the United States illegally, without proper entry documents, and without inspection by a United States Customs and Border Protection Officer. An Immigration detainer was placed on AGUILAR, Julio Cesar ARTEAGA-REA, and Jose HERNANDEZ-HERNANDEZ, after which they were lodged in the Benzie County Jail. Marcela ZAVALA was allowed to stay at the apartment with her three (3) children, believed to be United States citizens.

17. On July 16, 2008, during an interview in which AGUILAR acknowledged his Miranda rights and agreed to make a statement, AGUILAR acknowledged that he had given GARCIA $3200.00 and that she had signed a document stating such. AGUILAR also stated that GARCIA was not allowed to leave the apartment until she had paid off the debt. AGUILAR was very concerned about the money that he had given to GARCIA and asked for a copy of the document. AGUILAR stated, that once he returned to Mexico, he would use the document to force GARCIA to repay him.

18. On July 28, 2008, Immigration and Customs Enforcement (ICE) Senior Special Agent (SSA) Noe Salinas and Group Supervisor (GS) Sandra Todaro conducted an interview with GARCIA. The interview was conducted in Spanish at the ICE office in Sault Saint Marie, Michigan.

19. GARCIA stated she had contacted AGUILAR by phone. AGUILAR advised her that he would get her to the United States for a fee of 3,200 dollars. AGUILAR advised that she would take care of his children and he would find her other work to pay off the smuggling fee.

20. A subject known only as "El Tripas" picked her up at her house in Mexico and escorted her by bus to the Mexico and United States border. "El Tripas" paid the bus fare and left her with the guides that would smuggle her into the United States.

21. There was a group of about 30 people and 2 guides that crossed the desert on foot. The trip took 2 days and 2 nights. They arrived at a road and the group was split into two vans. The van that she was in then dropped GARCIA and 3 other people (1 female and 2 male) off to a second vehicle. GARCIA could not recall the driver's

(male) name.  The others were dropped off at different locations and GARCIA was driven all the way to Michigan.

22.  GARCIA stated that she did not give the driver directions or money-only a numerical code provided by "El Tripas".  The trip took about 2 ½ days.

23.  GARCIA stated that when she finally arrived at the house in Honor, Michigan she just wanted to sleep.  GARCIA stated that the next day AGUILAR and his wife Marcela ZAVALA went to work and she took care of the children.

24.  GARCIA stated that AGUILAR and Marcela ZAVALA worked 12 hours a day, 2 to 4 days a week in an unknown factory.  GARCIA would take care of the children every day, even if AGUILAR and Marcela ZAVALA did not work.  GARCIA was paid 3 dollars per hour but only from 7 am to 4 pm (27 dollars a day).  GARCIA would only be paid if AGUILAR and Marcela ZAVALA worked that day.

25.  GARCIA stated that in the beginning she was paid in cash.  In May, they began to deduct money from her pay to repay the smuggling fee.  GARCIA would send cash home at first to help her sick mother.  AGUILAR kept track of the debt in a notebook.

26.  GARCIA asked AGUILAR if she could work outside of the house so she could pay the debt faster.  AGUILAR told her that she had to pay first before she could leave.  AGUILAR then told her to sign an IOU; he did not ask if she would.

27.  AGUILAR told GARCIA that she could not leave until the remaining debt was paid  (3,000 dollars), her mother and family were also told she could not leave.

28.  GARCIA asked AGUILAR if she could go and work in Chicago so she could pay him back.  He said that she had to pay first.

29.  GARCIA stated that the week they were all arrested, she had called Yanin HERNANDEZ to pick her up.  GARCIA stated that Marcela ZAVALA got her upset when she overheard Marcela ZAVALA talking bad about her to other people who knew her family in  Mexico.  Marcela ZAVALA would then tell her friends that GARCIA did not do anything and was lazy.  Marcela ZAVALA would make her clean the house and cook for the children but would not give her any extra money.

30.  GARCIA stated that her family from Chicago came to get her but they did not bring enough money to get her released.  GARCIA stated that AGUILAR locked her in the house so she could not get to her family. AGUILAR stayed inside with GARCIA and sent Geovanni (AGUILAR's son) and Marcela ZAVALA out to talk to the family.

31.  Based upon the above information, affiant respectfully submits that there is probable cause to believe that Eliodoro AGUILAR-Solano and Marcela ZAVALA knowingly caused, assisted and aided and abetted in the smuggling, transportation, and harboring of Anai GARCIA-Calderon in violation of Title 8, U.S.C. § 1324 (a) (1) (A)(i), (ii), (iii).

Bruce Wagner, Special Agent
U.S. Immigration and Customs Enforcement

Sworn to before me and subscribed in my presence this _141_ day of August, 2008

HUGH W. BRENNEMAN, JR.
United States Magistrate Judge